**LINDEMANN LAW FIRM, APC**
BLAKE J. LINDEMANN, SBN 255747
9777 Wilshire Blvd., 4th Floor
Beverly Hills, CA 90212
Telephone:  (310)-279-5269
Facsimile:  (310)-300-0267
E-mail:     blake@lawbl.com

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN JIA, TINGTING DING, HAOQUAN LIANG, and XIAOFANG MEI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WEEE! INC., and DOES 1-100, <br><br> Defendants. | Case No. <br><br> **PLAINTIFFS' CLASS ACTION COMPLAINT** |

Plaintiffs Helen Jia, Tingting Ding, Haoquan Liang, and Xiaofang Mei, on behalf of themselves and those similarly situated ("Plaintiffs"), hereby file this complaint against Weee!, Inc., and DOES 1-100 (collectively, the "Defendants"), and demanding a trial by jury, aver as follows:

## INTRODUCTION

1.    This case concerns the February 2023 data breach event by one of the largest national grocers for Asian American, Weee! ("Weee" or "Weee!"), and specifically targets Chinese immigrants like Plaintiffs and representatives Helen Jia, Tingting Ding, Haoquan Liang, and Xiaofang Mei.

## JURISDICTION AND VENUE

2.    This Court has personal jurisdiction over Defendant as it regularly transacts business in the Central District of California. This Case was originally filed in the District of Defendant Weee!'s principal place of business at 47467 Fremont Blvd., Fremont, CA 94538, the Northern District of California, Case No. 4:23-cv-02314-DMR. Over Plaintiffs' objection, the case was transferred to the Southern District of New York, Case No. 1:24-cv-00534-PAE. The District Court in the Southern District of New York dismissed the case without prejudice based on lack of jurisdiction.

3.    This District Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, and 1711–15 ("CAFA").

4.    Venue is proper in this judicial district because a substantial part of the events giving rise to the causes of action occurred in this District and in California.

## THE PARTIES

5.    Plaintiff Helen Jia is a citizen and resident of the County of Orange, California. Plaintiff is a customer of Weee who made purchase orders with Weee! during the affected period, and who provided her personally identifiable information, including name, address, e-mail address, wechat information and PII, bank information, credit card information and other categories of PII, to Defendants.

1  Helen Jia has received more spam text messages, calls, we chat messages after the

2  leak than before it and the text messages, calls and we chat messages (including

3  content and timing) could only be known via the Weee leak.

4      6.    Plaintiff Tingting Ding is a citizen and resident of Los Angeles,

5  California.  Plaintiff is a customer of Weee who made purchase orders with Weee!

6  during the affected period, and who provided her personally identifiable information,

7  including name, address, e-mail address, wechat information and PII, bank

8  information, credit card information and other categories of PII, to Defendants.

9  $57,000 was wrongfully taken from Plaintiffs' bank account because of the data

10 breach, and as a direct consequence and result of the data breach.  Plaintiff Tingting

11 Ding received this attack against her account after the leak and not before the leak,

12 and the timing of the transaction and the exposure could only be known via the Weee

13 leak.

14     7.    Plaintiff Xiaofang Mei is a citizen and resident of Los Angeles,

15 California.  Plaintiff is a customer of Weee who made purchase orders with Weee!

16 during the affected period, and who provided her personally identifiable information,

17 including name, address, e-mail address, wechat information and PII, bank

18 information, credit card information and other categories of PII, to Defendants.

19 Xiaofang Mei has received more spam text messages, calls, we chat messages after

20 the leak than before it and the text messages, calls and we chat messages (including

21 content and timing) could only be known via the Weee leak.

22     8.    Defendant WEEE! Inc. is a corporation with its principal place of

23 business at 47467 Fremont Blvd., Fremont, CA 94538.  Weee discloses that its

24 principal place of business is in California on its website, and publicly elsewhere.

25     9.    Plaintiffs are ignorant of the true names and capacities of the

26 Defendants DOES 1 through 100, inclusive, whether individual, corporate,

27 associate, or otherwise, and therefore have sued them by the foregoing names which

28 are fictitious. Plaintiffs ask that when their true names and capacities are discovered

that this Complaint may be amended by inserting their true names and capacities in lieu of said fictitious names, together with apt and proper words to charge them. All references to any named Defendants shall also refer to said Does. When the true names and capacities are ascertained, Plaintiffs will amend this Complaint accordingly. On information and belief, Plaintiffs allege that each of the fictitiously named defendants was responsible in some manner for the acts and omissions alleged herein and are liable to Plaintiffs herein.

10.    Said DOE defendants may include, but do not necessarily include, individuals, businesses, corporations, partnerships, associations, joint ventures, related companies, affiliated companies, as well as product manufacturers, professionals, contractors, vendors, estates, administrators of estates, trusts and/or all other types of entities and/or individuals as discovery in the matter may reveal. Regardless, Plaintiffs allege that each of the defendants designated herein as DOE is legally responsible in some manner for the events and happenings herein referred to, and legally caused injury and damages proximately thereby to Plaintiffs and each of them are alleged.

11.    Plaintiffs are informed and believe, and based thereon allege, that each of the defendants are the agent and/or employee of each and every other defendant, and in doing the things herein alleged, each defendant was acting in the course and scope of said agency and/or employment and that each of the acts of the defendants was ratified and confirmed by each and every other defendant.

12.    Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated as a DOE is in some manner responsible for the events and happenings herein referred to and caused injury and damages proximately thereby to Plaintiffs as herein alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.    Plaintiffs, individually and on behalf of all other similarly situated persons (the "Class Members"), bring this consumer class action to secure redress

for Defendants' violations of their property and privacy rights. Plaintiffs and Class Members are consumers who entrusted their personally identifiable information ("PII") to Defendants. Defendants betrayed Plaintiffs and Class Members' trust by failing to properly safeguard and protect their PII, and publicly disclosing their PII without authorization, in violation of numerous laws, including, *inter alia*, the California Customer Records Act ("CRA") (Cal. Civ. Code § 1798.80, *et seq*.), California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq*.), California Information Practices Act ("IPA") (Cal. Civ. Code § 1798, *et seq*.), and California common law.

14.    On February 6, 2023, a threat actor named "IntelBroker" began leaking the data of Weee!'s customers on the "Breached" hacking and data breach forum (the "Breach").

15.    According to WeChat reports and a posting on its website, the Breach contained 1.1 millions of Weee!'s customers who placed orders after July 12, 2021: first and last names, email addresses, phone numbers, device types (i.e., iOS, PC, or Android), order notes, and other data used by Weee!.  Each of Plaintiffs placed several orders after July 12, 2021.  The reports of this data breach are provided herein as background information, but the information exfiltrated, shared, and exposed is not a complete recitation as reported, and is subject to discovery in this case, which to date has been deprived.

16.    Wechat has posted on February 7, 2023, in a post that Counsel can no longer access online, "[i]nformation about February 2023 Weee! Data Breach." Allegedly, it was stated "[w]e can confirm that no customer payment data was exposed as Weee! Does not retain any customer payment information in ***our*** databases." (emphasis added).  However, pursuant to the Payment Card Industry Data Security Standard (PCI DSS), businesses are required to store certain information for recurring payments.  Each of Plaintiffs paid for their Weee groceries pursuant to a credit cards stored on file with Weee.  Weee alleges now and

previously, that it uses a third party "payment gateway" to process payments.[1] Upon information and belief, and subject to additional investigation, Plaintiffs believe that Weee could not have complied with PCI DSS without retaining any attributes of payment card information, and that from other "databases" such attributes were linked and exposed in the breach. In addition, the notice does not state what became of the breach as to PII attributes of customers *prior to* July 12, 2021, and from July 12, 2022, to February of 2023 when the data leaked. It is also unclear what Weee meant about its post and whether customer payment data includes all PII attributes of the credit cards, if this includes the information shared with the CCP and Wechat as part of the "payment gateway" and whether the databases that were remote and/or physical that were not owned by Weee may have been involved in the data event. For these reasons, the notice is not in accordance with California law and does not thoroughly explain the scope, extent, and manner of the data breach.

17.    On July 18, 2023, after the data breach, Weee created a "terms of service" that has a limitation of liability clause, an arbitration provision, a disclaimer regarding data clause including the unauthorized access of "payment card information."[2]

18.    Defendants' security failures enabled the hackers to steal personal and financial data from Defendant and put Class members' personal and financial information at serious and ongoing risk. The hackers continue to use the information they obtained as a result of Defendant's inadequate security to exploit and injure Class members across the United States.

19.    The Breach was caused and enabled by Defendant's knowing violation of its obligations to abide by best practices and industry standards in protecting

---

[1] https://www.sayweee.com/company/security.
[2] https://www.sayweee.com/en/about/terms-of-service.

customers' personal information. Defendant grossly failed to comply with security standards and allowed its customers' financial information to be compromised, all in an effort to save money by cutting corners on security measures that could have prevented or mitigated the Breach.

20.    Defendant failed to uncover and disclose the extent of the Breach and notify its affected customers of the Breach in a timely manner. Defendant failed to take other reasonable steps to clearly and conspicuously inform its customers of the nature and extent of the Breach. Furthermore, by failing to provide adequate notice, Defendant prevented Class Members from protecting themselves from the Breach.

21.    Plaintiffs and Class Members are concerned about their finances, credit, identities, and PII and, as such, as to Helen Jia, Tingting Ding, and Xiaofang Mei, regularly monitor their credit, monitor their financial accounts and/or carefully store and dispose of their PII and other documents containing their PII. The concern is reasonable and justified. Because of the Data Breach, there is an immediate and substantial risk of identity theft, identity fraud, and records, fraudulent credit card activity, the opening or re-opening of new credit card accounts in their name, phishing, increased mailers marketing products and services. Plaintiffs have standing to bring this suit because as a direct and proximate result of Defendants' wrongful actions, inaction and omissions, and the resulting Data Breach, Plaintiffs have suffered (and will continue to suffer) economic damages and other injury and harm in the form of, inter alia, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud - risks justifying expenditures for protective and remedial services for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII, for which there is a well-established national and international market, and (vi) the financial and temporal cost of monitoring Plaintiffs' credit, monitoring their financial accounts, and those of their children, and mitigating their damages.

PLAINTIFFS' CLASS ACTION COMPLAINT

**The Data Breach**

22.    Defendants are responsible for allowing the Data Breach to occur because they failed to implement and maintain any reasonable safeguards and failed to comply with industry-standard data security practices, contrary to the representations made in privacy statements and their explicit and implied agreements with customers.

23.    During the duration of the Data Breach, Defendants failed to detect the unauthorized third parties' access to Defendants' systems and databases, notice the massive amounts of data that were compromised, and failed to take any steps to investigate the red flags that should have warned Defendants that their systems were not secure. As a result of Defendants' failure to protect the sensitive PII it was entrusted with, Plaintiffs and class members are at a significant risk of identity theft, financial fraud, and other identity-related fraud into the indefinite future. Plaintiffs and class members have also lost the inherent value of their PII.

24.    Plaintiffs and class members provided their PII to Defendants and any necessary party working with Defendants, with the expectation and understanding that Defendants would adequately protect and store their data. If Plaintiffs and class members had known that Defendants' data security was insufficient to protect their PII, they would have demanded that Defendants not store their PII on Defendants' databases or process it through Defendants' systems.

**Defendants Failed to Comply with Regulatory Guidance and Meet Consumers' Expectations**

25.    Federal agencies have issued recommendations and guidelines to temper data breaches and the resulting harm to individuals and financial institutions. For example, the FTC has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

PLAINTIFFS' CLASS ACTION COMPLAINT

26.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.   Among other things, the guidelines note businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

27.    Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

28.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

29.    In this case, Defendants were fully aware of their obligation to use reasonable measures to protect the PII of their customers, acknowledging as much in its own privacy policies. Defendants also knew that the Defendants' databases are the target for hackers. But despite understanding the consequences of inadequate

data security, the Defendants failed to comply with industry standard data security requirements.

30.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 and various state consumer protection and data breach statutes.

31.    Many of those who use Weee! to purchase groceries, including some purchases of Plaintiffs and the Class, use social media application Wechat as a payment gateway. Wechat has connections to the Chinese Communist Party (CCP), and Plaintiff is informed, and believes, that Weee! is thus, otherwise improperly sharing PII with Wechat, and indirectly other unauthorized companies, and government parties, including China and the CCP.[3]  Specifically, many articles have reported that Wechat is far worse than Tiktok, and may soon be banned.[4]  The attributes of PII that are shared with WeChat from the class include payment information (credit card and/or debit account, location data, nutrition and information about grocery orders, and thereby information about Chinese immigrants and their living and lifestyle in the United States, as well as their movements including where they are located and where they receive groceries/sustenance.[5]

_____

[3] *See also* *https://www.sayweee.com/en/about/privacy-policy*.

(describing sharing and disclosure of information for many purposes including "advertising and marketing" "corporate transactions", "within our corporate organization," "service providers.").

[4] https://www.wsj.com/articles/tiktok-is-bad-but-wechat-is-worse-china-social-media-data-censorship-spying-ccp-app-mass-surveillance-11674593345.

[5] https://www.rfa.org/english/news/china/data-12162022165549.html.

32.     NBC News reports, "Weee! banks on the power of social group buying to bring customers goods that might otherwise be hard to get…Group buying has become especially popular among Chinese living in parts of the U.S. far away from Chinatowns."[6]  Since the data breach, Plaintiffs and the Class have been getting bombarded with unsolicited offers, requests, advertisements, and marketing through Wechat, because the data breach exposed PII including contact information shared between Plaintiffs/Class, Wechat, and Weee!.  The unsolicited offers, requ3ests, advertisements and marketing were far more after the leak than before, and/or the communications used information that realistically could be known only via the Weee leak.  The same threat actors are also using the data obtained (either voluntarily through the wechat payment gateway) or involuntarily for the purposes of targeting Plaintiffs and the class with financial scams.[7]  The PII attributes of Plaintiffs and the Class shared through wechat's payment gateway, include payment information (credit card numbers, addresses, email address, physical addresses, phone numbers), details of grocery orders, amount of purchases, location data including physical location during payment and other travel pattern data.

**Effect of the Data Breach and Data Sharing**

33.     Defendants' failure to keep Plaintiffs' and class members' PII secure has severe ramifications. Given the sensitive nature of the PII stolen in the Data Breach, cyber criminals have the ability to commit identity theft and other identity-related fraud against Plaintiffs and class members now and into the indefinite future.

---

[6] https://www.nbcnews.com/news/asian-america/weee-wants-streamline-wechat-group-buying-experience-n798601
[7] https://consumer.ftc.gov/consumer-alerts/2023/05/investment-scam-targeting-wechat-groups.

PLAINTIFFS' CLASS ACTION COMPLAINT

34.    The information stolen from Defendants included usernames and passwords-PII that is highly valued among cyber thieves and criminals on the Dark Web. For example, Apple ID usernames and passwords were sold on average for $15.39 each on the Dark Web, making them the most valuable non-financial credentials for sale on that marketplace. Usernames and passwords for eBay ($12), Amazon (≤$10), and Walmart (≤$10) fetch similar amounts. Consumers often reuse passwords. By unlawfully obtaining this information, cyber criminals can use these credentials to access other services beyond that which was hacked.

35.    PII also has significant monetary value in part because criminals continue their efforts to obtain this data.  In other words, if any additional breach of sensitive data did not have incremental value to criminals, one would expect to see a reduction in criminal efforts to obtain such additional data over time. Instead, just the opposite has occurred.

36.    The value of PII is key to unlocking many parts of the financial sector for consumers. Whether someone can obtain a mortgage, credit card, business loan, tax return, or even apply for a job depends on the integrity of their PII. Similarly, the businesses that request (or require) consumers to share their PII as part of a commercial transaction do so with the expectation that its integrity has not been compromised.

37.    Annual monetary losses for victims of identity theft are in the billions of dollars. In 2017, fraudsters stole $16.8 billion from consumers in the United States, which includes $5.1 billion stolen through bank account take-overs.

38.    The annual cost of identity theft is even higher. McAfee and the Center for Strategic and International Studies estimates that the likely annual cost to the global economy from cybercrime is $445 billion a year.

39.    Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, in addition to the irreparable damage that may result from the theft of PII, identity theft victims must spend numerous

hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.

40.    Even before the occurrence of identity theft, victims may spend valuable time and suffer from the emotional toll of a data breach. Here, Plaintiffs have already spent approximately four hours investigating the Data Breach after receiving notice from Defendants, including independent online research regarding the scope of the breach. They will continue to expend time monitoring their family's credit and other identity-related information and is exploring options for identity theft protection services because Defendants did not offer such services as a result of the Data Breach.

41.    The impact of identity theft can have ripple effects, which can adversely affect the future financial trajectories of victims' lives. For example, the Identity Theft Resource Center reports that respondents to their surveys in 2013-2016 described that the identity theft they experienced affected their ability to get credit cards and obtain loans, such as student loans or mortgages.  For some victims, this could mean the difference between going to college or not, becoming a homeowner or not, or having to take out a high interest payday loan versus a lower-interest loan.

42.    It is no wonder, then, that identity theft exacts a severe emotional toll on its victims. The 2017 Identity Theft Resource Center survey evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;
- 67% reported anxiety;
- 66% reported feelings of fear related to personal financial safety;
- 37% reported fearing for the financial safety of family members;
- 24% reported fear for their physical safety;
- 15.2% reported a relationship ended or was severely and negatively

1             o  impacted by the identity theft; and

2           • 7% reported feeling suicidal.

3      43.    Identity theft can also exact a physical toll on its victims. The same

4 survey reported that respondents experienced physical symptoms stemming from

5 their experience with identity theft:

6           • 48.3% of respondents reported sleep disturbances;

7           • 37.1% reported an inability to concentrate / lack of focus;

8           • 28.7% reported they were unable to go to work because of physical

9             symptoms;

10           • 23.1% reported new physical illnesses (aches and pains, heart

11             palpitations, sweating, stomach issues); and

12           • 12.6% reported a start or relapse into unhealthy or addictive behaviors.

13      44.    There may also be a significant time lag between when PII is stolen and

14 when it is actually misused. According to the U.S. Government Accountability

15 Office, which conducted a study regarding data breaches:

16             [L]aw enforcement officials told us that in some cases, stolen data may

17             be held for up to a year or more before being used to commit identity

18             theft. Further, once stolen data have been sold or posted on the Web,

19             fraudulent use of that information may continue for years. As a result,

20             studies that attempt to measure the harm resulting from data breaches

21             cannot necessarily rule out all future harm.

22      45.    The risk of identity theft is particularly acute where detailed personal

23 information is stolen, such as the PII that was compromised in the Data Breach.

24      46.    As the result of the Data Breach, Plaintiffs and class members have

25 suffered or will suffer economic loss and other actual harm for which they are

26 entitled to damages, including, but not limited to, the following:

27           a.  identity theft and fraud resulting from theft of their PII;

28

b. costs associated with the detection and prevention of identity theft and unauthorized use of their online accounts, including financial accounts;

c. losing the inherent value of their PII;

d. losing the value of Defendants' explicit and implicit promises of adequate data security;

e. costs associated with purchasing credit monitoring and identity theft protection services;

f. unauthorized access to and misuse of their online accounts;

g. unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

h. lowered credit scores resulting from credit inquiries following fraudulent activities;

i. costs associated with time spent and the loss of productivity or enjoyment  of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, addressing other varied instances of identity theft – such as credit cards, bank accounts, loans, government benefits, and other services procured using the stolen PII, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, updating login information for online accounts sharing the same login credentials as were compromised in the Data Breach, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach;

j.  the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being in the possession of one or more unauthorized third parties; and

k.  continued risk of exposure to hackers and thieves of their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect Plaintiffs and class members.

47.  Additionally, Plaintiffs and class members place significant value in data security. According to a recent survey conducted by cyber-security company FireEye, approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less personal information to organizations that suffered a data breach.

48.  The cost of hosting or processing customers' PII on or through Defendants' databases and systems includes things such as the actual cost of the servers and employee hours needed to process said transactions. One component of the cost of using these services is the explicit and implicit promises Defendants made to protect customers' PII. Because of the value customers place on data privacy and security, companies with robust data security practices can command higher prices than those who do not. Indeed, if customers did not value their data security and privacy, companies like Defendants would have no reason to tout their data security efforts to their actual and potential customers.

49.  Had the victims of the Data Breach including Plaintiffs known the truth about Defendants' data security practices—that Defendants would not adequately protect and store their data—they would have demanded that Defendants not store their PII on Defendants' databases or process it through Defendants' systems.

50.    Plaintiffs and class members are at an imminent risk of fraud, criminal misuse of their PII, and identity theft for years to come as result of the data breach and Defendants' deceptive and unconscionable conduct.

51.    Upon information the *Liau* class action was filed and/or encouraged in bad faith and through collusion, to wrest jurisdiction from its rightful and correct place in California given this was the locus of the data breach, the location of the data in question, more than 75% of the class members and other factors and facts to be presented when appropriate.

## CLASS ACTION ALLEGATIONS

52.    Pursuant to Fed. R. Civ. Proc. 23, Plaintiffs seek certification on behalf of two subclasses, defined as follows:

53.    **National Class**: All customers in the United States whose PII was compromised in the Data Breach.

54.    **California Subclass**: All customers in California whose PII was compromised in the Data Breach.

55.    The National Class, and California subclass are collectively referred to herein as the "Class."

56.    Excluded from the Class are Defendants themselves, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

57.    **Risk of Inconsistent or Varying Adjudications**. As the proposed class members include tens, if not hundreds, of thousands of customers, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants. For example, injunctive relief may be entered in multiple cases, but the ordered relief

may vary, causing Defendants to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which it will comply. Class action status is also warranted because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

58.    **Numerosity**. The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of class members is unknown to Plaintiffs at this time, Defendants has admitted that several databases in Defendants' hosting were compromised in the Data Breach, suggesting that thousands of customers were affected by the Data Breach.

59.    **Commonality and Predominance**. This action involves common questions of law and fact that predominate over any questions affecting individual class members. The common questions include, but are not limited to:

a.    Whether Defendants knew or should have known that its computer and data storage systems were vulnerable to attack;

b.    Whether Defendants omitted or misrepresented material facts regarding the security of its computer and data storage systems and their inability to protect vast amounts of sensitive data, including Plaintiffs' and class members' PII;

c.    Whether Defendants failed to take adequate and reasonable measures to ensure such computer and data systems were protected;

d.    Whether Defendants failed to take available steps to prevent and stop the Data Breach from happening;

e.    Whether Defendants failed to disclose the material facts that it did not have adequate computer systems and security practices to safeguard PII;

f.    Whether Defendants owed duties to Plaintiffs and class members to protect their PII;

g.    Whether Defendants owed a duty to provide timely and accurate notice of the Data Breach to Plaintiffs and class members;

h.    Whether Defendants breached their duties to protect the PII of Plaintiffs and class members by failing to provide adequate data security;

i.    Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and class members;

j.    Whether Defendants' failure to secure Plaintiffs' and class members' PII in the manner alleged violated federal, state and local laws, or industry standards;

k.    Whether Defendants was negligent, reckless or intentionally indifferent in its representations to Plaintiffs and class members concerning its security protocols;

l.    Whether Defendants' conduct and practices described herein amount to acts of intrusion upon seclusion;

m.    Whether Defendants was negligent in making misrepresentations to Plaintiffs and class members;

n.    Whether Defendants was negligent in establishing, implementing, and following security protocols;

o.    Whether the Plaintiffs' and class members' PII was compromised and exposed as a result of the Data Breach and the extent of that compromise and exposure;

p.    Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach, resulting in the unauthorized access to and/or theft of Plaintiffs' and class members' PII;

q.    Whether Defendants has a contractual obligation to use reasonable security measures and whether it complied with such contractual obligation;

r.    Whether Plaintiffs and class members were the intended third-party beneficiaries of any contractual obligations owed by Defendants;

s. Whether Defendants' conduct amounted to violations of California consumer protection and data breach statutes;

t. Whether, as a result of Defendants' conduct, Plaintiffs and class members face a significant threat of harm and/or have already suffered harm, and, if so, the appropriate measure of damages to which they are entitled;

u. Whether, as a result of Defendants' conduct, Plaintiffs and class members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief;

v. Whether Plaintiffs and class members are entitled to compensatory damages;

w. Whether the Plaintiffs and class members are entitled to punitive damages; and

x. Whether the Plaintiffs and class members are entitled to statutory damages.

60. **Typicality**. Plaintiffs' claims are typical of other class members' claims because Plaintiffs and class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

61. **Adequacy**. Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class. All Plaintiffs are members of the Nationwide Class and the California Subclass, and Plaintiffs Jia, Tingting Ding, and Xiaofang Mei are members of both sub-classes. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in privacy litigation and consumer protection claims. Plaintiffs intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

62. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the

class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendants, and thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

63. **Injunctive and Declaratory Relief**. Class certification is also appropriate as an injunctive relief measure. Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole. Moreover, Defendants continues to maintain their inadequate security practices, retains possession of Plaintiffs' and the class members' PII, and have not been forced to change their practices or to relinquish PII by nature of other civil suits or government enforcement actions, thus making injunctive and declaratory relief a live issue and appropriate to the Class as a whole.

## <u>COUNTS</u>

### FIRST COUNT

### Intrusion Upon Seclusion

### (Brought on Behalf of Plaintiffs and the Classes)

64. Plaintiffs repeat and reallege all preceding paragraphs contained herein.

65. California adheres to Restatement (Second) of Torts, § 652B with no material variation.

66.   "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B.

67.   Defendants intentionally intruded on and into Plaintiffs' and Class members' solitude, seclusion, or private affairs by constructing an inadequate system to store data of customers as well as the payment gateway with WeChat that caused vulnerable and sensitive PII to be transmitted to the Chinese Government.   The connections are obvious.   The CCP punishes dissidents for the most minor infractions and this gateway utilized by Weee was completely improper.

68.   These intrusions are highly offensive to a reasonable person. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the data breach and tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Class members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity.  This is also evidenced by the banning of Tiktok (for less sensitive PII and frankly no physical address, email address and phone number as to Tiktok), as well as the discussed concerns with WeChat.

69.   Defendants' exploitation of immigrants' information through lax data and cybersecurity practices and payment gateway channels through WeChat, contributes to the highly offensive nature of Defendants' activities.

70.   Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

71.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

72.     As a result of Defendants' actions, Plaintiffs and Class members seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of state law, and destruction of all personal data obtained in violation of state law.

73.     As a result of Defendants' actions, Plaintiffs and Class members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendants' actions—which were malicious, oppressive, willful—were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

74.     Plaintiffs seek restitution for the unjust enrichment obtained by Defendants as a result of the Data Breach and the sharing of PII through the Wechat payment gateway.

## SECOND COUNT

### California Constitutional Right to Privacy

### (Brought on Behalf of Plaintiffs and the Classes)

75.     Plaintiffs repeat and reallege all preceding paragraphs contained herein.

76.     The California Supreme Court held in Butt v. California (1992) 4 Cal. 4th 668, 680, "California has assumed specific responsibility for a statewide public education system open on equal terms to all." Specifically, the California Constitution guarantees both the right to privacy and the right to an education:

> "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

> "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement."

77. Plaintiffs in their own capacity, and Class members have reasonable expectations of privacy in their files with the Defendants.

78. The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Subclass members as customers who are immigrants.

79. Defendants recklessly intruded on and into Plaintiffs' and Subclass members' solitude, seclusion, right of privacy, or private affairs by intentionally designing the computer systems and databases in a manner subject to, and vulnerable to a cybersecurity attack. Such intrusion also impermissibly occurred through the wechat payment processing gateway effectively owned and operated by the CCP.

80. These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential information about consumers and immigrants (that the Chinese government is attempting to monitor and control from afar and/or otherwise affect American citizens through commerce), constituting an egregious breach of social norms. This is evidenced by, *inter alia*, countless consumer surveys, studies, and op-eds decrying the online tracking of children, centuries of common law, state and federal statutes and regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, and scholarly literature on consumers' reasonable expectations. Further, the extent of the intrusion cannot be fully known, as the nature of privacy invasion involves sharing Plaintiffs' and Subclass members' personal information with potentially countless third-parties, known and unknown, for undisclosed and potentially unknowable purposes, in perpetuity. This is also further, evidenced by

the various Congressional reports and concerns about the CCP's impact and use of information obtained from U.S. citizens, and those going through the U.S. immigration process.

81.    Plaintiffs and Subclass members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

82.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Subclass members.

83.    As a result of Defendants' actions, Plaintiffs and Subclass members seek injunctive relief, in the form of Defendants' cessation of tracking practices in violation of state law, and destruction of all personal data obtained in violation of state law. As a result of Defendants' actions, Plaintiffs and Subclass members seek nominal and punitive damages in an amount to be determined at trial. Plaintiffs and Class members seek punitive damages because Defendants' actions - which were malicious, oppressive, willful - were calculated to injure Plaintiffs and made in conscious disregard of Plaintiffs' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct, particularly giving their knowing sharing of the most sensitive attributes of the PII with the CCP owned and operated Wechat payment gateway.

## **THIRD COUNT**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

**(On Behalf of Plaintiffs and Each Class Member)**

84.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

85.    The California Unfair Competition Law, Cal Bus. & Prof. Code § 17200, *et seq*., prohibits any "unlawful, fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the

UCL and relevant case law. By virtue of their above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendants engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

86.    In the course of conducting its business. Defendants committed "unlawful business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs and Class Members' PII, and violating the statutory and common law alleged herein in the process, including, *inter alia*, the California CMIA, the California CRA, and the California IPA. Plaintiffs and Class Members reserve the right to allege other violations of law by Defendants constituting other unlawful business acts or practices. Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

87.    Defendants also violated the UCL by failing to timely notify Plaintiffs and Class Members regarding the unauthorized release (and/or threats of unauthorized release) and disclosure of their PII. If Plaintiffs and Class Members had been notified in an appropriate fashion, they could have taken precautions to safeguard and protect their PII and identities.  Defendants also committed a violation based on the vague, incomplete, and misleading scope of the notice.  Defendants also violated the UCL by sharing their most sensitive information with the CCP owned and operated payment gateway of Wechat.

88.    Defendants' above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair business acts and practices" in violation of the UCL in that Defendants' wrongful conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity

of Defendants' wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct.

89.    The UCL also prohibits any "fraudulent business act or practice." Defendants' above-described claims, nondisclosures and misleading statements were false, misleading and likely to deceive the consuming public in violation of the UCL.

90.    As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and their violations of the UCL, Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, risks justifying expenditures for protective and remedial identity fraud for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial accounts, and mitigating her damages.

91.    Unless restrained and enjoined, Defendants will continue to engage in the above-described wrongful conduct and more data breaches will occur. Plaintiffs, therefore, on behalf of themselves and Class Members, and the general public, also seeks restitution and an injunction prohibiting Defendants from continuing such wrongful conduct, and requiring Defendants to modify their corporate culture and design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures protocols, and software and hardware systems to safeguard and protect the PII entrusted to them,

as well as all other relief the Court deems appropriate, consistent with Cal. Bus. &
Prof. Code § 17203.

## **FOURTH COUNT**

### **VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT**

### **(Cal. Civ. Code § 1798.80, *et seq*.)**

### **(On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)**

92.     Plaintiffs re-allege and incorporate by reference herein each and every
allegation contained herein above as though fully set forth and brought in this cause
of action.

93.     To ensure that personal information about California residents is
protected, the California Legislature enacted the Customer Records Act, California
Civil Code § 1798.81.5, which requires that any business that "owns licenses, or
maintains personal information about a California resident shall implement and
maintain reasonable security procedures and practices appropriate to the nature of
the information, to protect the personal information from unauthorized access,
destruction, use, modification, or disclosure."

94.     As described above. Defendants failed to implement and maintain
reasonable security procedures and practices to protect the Plaintiffs and Class
Members' PII, and thereby violated the California Customer Records Act.

95.     Under California Civil Code § 1798.82, any business that obtains and
retains PII must promptly and "in the most expedient time possible and without
unreasonable delay" disclose any Data Breach involving such retained data.

96.     By its above-described wrongful actions, inaction, omissions, and want
of ordinary care. Defendants failed to design, adopt, implement, control, direct,
oversee, manage, monitor and audit appropriate data security processes, controls,
policies, procedures, protocols, and software and hardware systems to safeguard and
protect Plaintiffs and Class Members' PII.

97.    The disclosure was inadequate as pled, because the disclosure did not accurately reflect the requirements of holding credit card information, did not discuss all databases impacted, and did not discuss customers as to different time periods including the six months prior to the breach.

98.    Defendants also unreasonably delayed and failed to disclose the Data Breach (and threat of the data breach) to Plaintiffs and Class Members in the most expedient time possible and without unreasonable delay when they knew, or reasonably believed, Plaintiffs and Class Members' PII had been wrongfully disclosed to an unauthorized person or persons.  The delay is based on the failure to accurately identify the scope, extent and manner of the breach, and to provide appropriate follow-ups and notifications as to the breach.

99.    As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach and its violations of the California CRA, Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud - risks Justifying expenditures for protective and remedial services for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII, for which there is a well-established  national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial accounts, and mitigating her damages.

100.    Plaintiff is also entitled to injunctive relief under California Civil Code Section 1798.84(e).

## **FIFTH COUNT**

## **VIOLATION OF THE CALIFORNIA INFORMATION PRACTICES ACT**

### **(Cal. Civ. Code §§ 1798, *et seq.*)**

**(On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)**

101.    Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

102.    Pursuant to the California Information Practices Act of 1977, California Civil Code § 1798.21, a company is required "to establish appropriate and reasonable administrative, technical, and physical safeguards to ensure compliance with provisions of this chapter, to ensure the security and confidentiality of records, and to protect against anticipated threats or hazards to their security or integrity which could result in any injury."

103.    As described above, Defendants failed to implement and maintain reasonable security procedures and practices to protect the Plaintiffs and Class Members' PII, and thereby violated the California IPA.

104.    Under California Civil Code § 1798.29, any agency that obtains and retains PII must promptly and "in the most expedient time possible and without unreasonable delay" disclose any Data Breach involving such retained data.  This did not occur accurately.  In addition, the most sensitive attributes of PII information were shared with the CCP owned and operated Wechat through the CCP payment gateway.

105.    By its above-described wrongful actions, inaction, omissions, and want of ordinary care. Defendants failed to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiffs and Class Members PII.

106.    Defendants also unreasonably delayed and failed to disclose the Data Breach to Plaintiffs and Class Members in the most expedient time possible and without unreasonable delay when they knew, or reasonably believed. Plaintiffs and

Class Members' PII had been wrongfully disclosed to an unauthorized person or persons.

**SIXTH COUNT**

**BREACH OF CONFIDENTIALITY**

**(On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)**

107.   Plaintiffs re-allege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

108.   Plaintiffs and Class Members' unique, personal, and private PII in Defendants' possession, custody, and control was (and continues to be) highly confidential.

109.   Defendants breached the confidentiality of Plaintiffs' and Class Members' PII by failing to identify, implement, maintain and monitor appropriate data security measures, policies, procedures, protocols, and/ software and hardware systems to ensure the security and confidentiality of Plaintiffs and Class Members' PII, and wrongfully releasing and disclosing their PII without authorization, as described above.

110.   It is hard to comprehend a more egregious breach than sharing location data, payment PII, address, e-mails, phone numbers, location of purchase, and details of eating and nutrition as to U.S. citizens and Chinese immigrants with the CCP owned and operated wechat payment gateway.

111.   Had Defendants not engaged in the above-described wrongful actions, inaction and omissions, the Data Breach never would have occurred and Plaintiffs and Class Members' PII would not have been wrongfully released, disclosed, compromised, disseminated to the world, and wrongfully used. Defendants' wrongful conduct constitutes (and continues to constitute) the tort of breach of confidentiality at California common law.

112.   As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an imminent, immediate and the continuing increased risk of identity theft, identity fraud - risks justifying expenditures for protective and remedial services for which she is entitled to compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of her PII, (iv) statutory damages under the California CMIA, (v) deprivation of the value of her PII, for which there is a well-established national and international market, and/or (vi) the financial and temporal cost of monitoring her credit, monitoring her financial  accounts, and mitigating her damages.

## SEVENTH COUNT

## CONSTRUCTIVE FRAUD

**(On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)**

113.   The preceding factual statements and allegations are incorporated by reference.

114.   Defendants, in collecting Plaintiffs and Class Members' nonpublic, personal, financial, were therefore entrusted with Plaintiffs and Class Members' nonpublic personal, and financial information, and were put in the same confidential and special relationship with Plaintiffs and Class Members as they had with the companies that provided them with financial insurance.

115.   Defendants breached their confidential and special relationship with Plaintiffs and Class Members by failing to adequately secure Plaintiffs and Class Members' nonpublic personal and financial information from unauthorized users, including cyber thieves who stole the information as described herein.  Specifically, Defendants failed to disclose the sharing location data, payment PII, address, e-

mails, phone numbers, location of purchase, and details of eating and nutrition as to U.S. citizens and Chinese immigrants with the CCP owned and operated wechat payment gateway.

116.   As a direct and proximate result of Defendants' breach, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, damages and injuries.

## EIGHTH COUNT

### BREACH OF EXPRESS CONTRACT

### (On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)

117.   The preceding factual statements and allegations are incorporated by reference.

118.   Defendants have a privacy policy on their website, as discussed *ante*.

119.   Plaintiffs and Class Members, upon information and belief entered into express contracts with Defendants that include Defendants' promise to protect nonpublic personal information given to Defendants or that Defendants gather on their own, from disclosure. Defendants' promise was incorporated into each of the privacy policies, manuals, and other enrollment documents issued to Plaintiffs and Class Members. This privacy policy is found at https://www.sayweee.com/en/about/privacy-policy.

120. Defendants breached their contractual obligation to protect the nonpublic personal

information Defendants gathered when the information was accessed by unauthorized personnel as part of the cyber hacking Incident that occurred in 2023. Defendants breached their contractual obligation as to the sharing location data, payment PII, address, e-mails, phone numbers, location of purchase, and details of eating and nutrition as to U.S. citizens and Chinese immigrants with the CCP owned and operated wechat payment gateway.

121.   As a direct and proximate result of the Data Breach, and the sharing of PII through the CCP owned payment gateway, Plaintiffs and Class Members have been harmed and have suffered, and will continue to suffer, damages and injuries.

**NINTH COUNT**

**BREACH OF IMPLIED CONTRACT**

**(On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)**

122.   Defendants provided Plaintiffs and Class Members with an implied contract to protect and keep Plaintiffs' private nonpublic personal, educational, and financial information when they gathered the information from each of their customers.

123.   Plaintiffs and Class Members would not have provided their personal or financial and health information to Defendants or their subsidiaries, but for Defendants' implied promises to safeguard and protect Defendants' customers' nonpublic personal and financial information.

124.   Plaintiffs and Class Members performed their obligations under the implied contract when they provided their private personal, educational, and financial information as customers and were furnished with the services provided by Defendants.

125.   Defendants breached the implied contracts with Plaintiffs and Class Members by failing to protect and keep private the nonpublic personal and financial information provided to them about Plaintiffs and Class Members.

126.   Defendants breached their contractual obligation to protect the nonpublic personal

information Defendants gathered when the information was accessed by unauthorized personnel as part of the cyber hacking Incident that occurred in 2023. Defendants breached their contractual obligation as to the sharing location data, payment PII, address, e-mails, phone numbers, location of purchase, and details of

1  eating and nutrition as to U.S. citizens and Chinese immigrants with the CCP owned
2  and operated wechat payment gateway.

3        127.   As a direct and proximate result of Defendants' breach of their implied
4  contracts, Plaintiffs and Class Members have been harmed and have suffered, and
5  will continue to suffer, damages and injuries.

6                          **TENTH COUNT**
7                      **UNJUST ENRICHMENT**
8  **(On Behalf of Plaintiffs and Each Class Members against all Defendants and**
9                        **DOES 1-100)**

10       128.   The preceding factual statements and allegations are incorporated by
11 reference.

12       129.   Plaintiffs and Class Members conferred a benefit to Defendants in the
13 form of payment for goods and services.

14       130.   Defendants failed to pay for the benefits provided to them by Plaintiffs
15 and Class Members by failing to protect and keep private the nonpublic personal
16 financial information with which Plaintiffs and Class Members entrusted Defendants
17 with.

18       131.   Defendants shared location data, payment PII, address, e-mails, phone
19 numbers, location of purchase, and details of eating and nutrition as to U.S. citizens
20 and Chinese immigrants with the CCP owned and operated wechat payment
21 gateway.

22       132.   Defendants' failure to pay for the benefits provided to them, *i.e.*, to
23 protect and keep private Plaintiffs and Class Members' nonpublic personal and
24 financial information, was to the detriment of Plaintiffs and Class Members because
25 it was Plaintiffs' and Class Members' nonpublic personal and financial information
26 that was taken by cyber thieves.

27       133.   As a direct and proximate result of Defendants' failure to pay for the
28 benefits provided to them, Plaintiffs and the Class have been harmed and have

PLAINTIFFS' CLASS ACTION COMPLAINT

suffered, and will continue to suffer, damages and injuries, and are entitled to restitution.

## ELEVENTH COUNT

## DECLARATORY RELIEF

## (On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)

134. The preceding factual statements and allegations are incorporated by reference.

135. An actual controversy has arisen in the wake of the data breach regarding Defendants' duties to safeguard and protect Plaintiffs and Class Members' confidential and sensitive PII. Defendants' PII security measures were (and continue to be) woefully inadequate. Defendants dispute these contentions and contend that their security measures are appropriate.

136. Plaintiffs and Class Members continue to suffer damages, other injury or harm as additional identity theft and identity fraud occurs.

137. Therefore, Plaintiffs and Class Members request a judicial determination of their rights and duties, to ask the Court to enter a judgment declaring, *inter alia*, (i) Defendants owed (and continue to owe) a legal duty to safeguard and protect Plaintiffs and Class members' confidential and sensitive PII, and timely notify them about the data breach, (ii) Defendants breached (and continue to breach) such legal duties by failing to safeguard and protect Plaintiffs and Class Members' confidential and sensitive PII, (iii) Defendants' breach of their legal duties directly and proximately caused the data breach, and the resulting damages, injury, or harm suffered by Plaintiffs and Class Members. A declaration from the court ordering the Defendants to stop their illegal practices is required (iv) Defendants must cease using the CCP owned and operated Wechat payment gateway to process transactions.

1

## **TWELFTH COUNT**

2

## **NEGLIGENCE/GROSS NEGLIGENCE/NEGLIGENCE PER SE**

3

**(On Behalf of Plaintiffs and Each Class Members against all Defendants**

4

**and DOES 1-100)**

5      138.   The preceding factual statements and allegations are incorporated by

6   reference.

7      139.   Defendants, in offering grocery services and products, knew that

8   Plaintiffs and class members' sensitive PII would be stored or processed by

9   Defendants systems and databases, including in Defendants Hosting. Defendants in

10  fact stored and/or processed this PII through and on its computer systems and/or

11  databases. Plaintiffs  and many of the class members are a particularly vulnerable

12  and defenseless group of Defendants' users and are more significantly damaged and

13  imminently threatened to be damaged as a result of Defendants' negligence

14  described herein because, without limitation, they are especially: (1) as Chinese

15  immigrants, are attractive targets to cyber criminals; (2) vulnerable to fraudulent

16  activity and identity theft with respect to their stolen PII; (3) defenseless to protect

17  themselves from such theft, fraud, or identity theft; and (4) subject to prolonged

18  surreptitious fraud and identity theft following the theft of their data, all of which is

19  well documented in academic and government-issued materials, by experts in the

20  field, and by the media.

21     140.   By collecting, storing, and using this data, Defendants had a duty of

22  care to Plaintiffs and class members to exercise reasonable care in obtaining,

23  retaining, securing, safeguarding, deleting, and protecting this PII in Defendants'

24  possession from being compromised, lost, stolen, accessed, and misused by

25  unauthorized persons. More specifically, this duty included, among other things: (a)

26  designing, maintaining, and testing Defendants' security systems and data storage

27  architecture to ensure that Plaintiffs' and class members' PII was adequately secured

28  and protected; (b) implementing processes that would detect an unauthorized breach

of Defendants' security systems and data storage architecture in a timely manner; (c) timely acting on all warnings and alerts, including public information, regarding Defendants' security vulnerabilities and potential compromise of the PII of Plaintiffs and class members; (d) maintaining data security measures consistent with industry standards and applicable state and federal law; and (e) timely and adequately informing Plaintiffs and class members if and when a data breach occurred notwithstanding undertaking (a) through (d) above.

141.  Defendants shared location data, payment PII, address, e-mails, phone numbers, location of purchase, and details of eating and nutrition as to U.S. citizens and Chinese immigrants with the CCP owned and operated wechat payment gateway.

142.  Defendants had common law duties to prevent foreseeable harm to Plaintiffs and class members. These duties existed because Plaintiffs and class members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiffs and class members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendants also knew that it was more likely than not Plaintiffs and other class members would be harmed by such theft.

143.  Defendants had a duty to monitor, supervise, control, or otherwise provide oversight to safeguard the PII that was collected, stored, and processed by Defendants computer systems.

144.  Defendants' duties to use reasonable security measures also arose as a result of the special relationship that existed between Defendants, on the one hand, and Plaintiffs and class members, on the other hand. The special relationship arose because Plaintiffs and class members entrusted Defendants with their PII by virtue of their participation as customers and immigrants buying services. Defendants

1    alone could have ensured that its security systems and data storage architecture were

2    sufficient to prevent or minimize the Data Breach.

3    145.   Defendants' duties to use reasonable data security measures also arose

4    under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45,

5    which prohibits "unfair . . . practices in or affecting commerce," including, as

6    interpreted and enforced by the FTC, the unfair practice of failing to use reasonable

7    measures to protect PII. Various FTC publications and data security breach orders

8    further form the basis of Defendants' duties. In addition, individual states have

9    enacted statutes based upon the FTC Act that also created a duty.

10    146.   Defendants owed heightened duties to Plaintiffs Jia, Tingting Ding,

11    Xiaofang Mei, and the Nationwide Minor and California Minor Subclass members,

12    and Defendants was aware of the heightened vulnerability and damage that would

13    be suffered by Plaintiffs Jia, Tingting Ding, Xiaofang Mei, and the Nationwide

14    Minor and California Minor Subclass members in the event of a data breach.

15    147.   Defendants knew or should have known that its computer systems and

16    data storage architecture were vulnerable to unauthorized access and targeting by

17    hackers for the purpose of stealing and misusing confidential PII.

18    148.   Defendants knew or should have known that a breach of its systems and

19    data storage architecture would inflict millions of dollars of damages upon Plaintiffs

20    and the Class, and Defendants was therefore charged with a duty to adequately

21    protect this critically sensitive information.

22    149.   Defendants breached the duties it owed to Plaintiffs and class members

23    described above, including the heightened duties owed to Plaintiffs Jia, Tingting

24    Ding, Xiaofang Mei, and the Nationwide Minor and California Minor Subclass

25    members, and thus was negligent. Defendants breached these duties by, among other

26    things, failing to: (a) exercise reasonable care and implement adequate security

27    systems, protocols and practices sufficient to protect the PII of Plaintiffs and class

28

members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

150.    But for Defendants' wrongful and negligent breach of its duties owed to Plaintiffs and class members, their PII would not have been compromised.

151.    As a direct and proximate result of Defendants' negligence, Plaintiffs and class members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen PII; illegal sale of the compromised PII on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach investigating the nature of the Data Breach not fully disclosed by Defendants, reviewing bank statements, payment card statements, and credit reports; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the PII; lost benefit of their bargains and overcharges for services; and other economic and non-economic harm.

## THIRTEENTH COUNT

### CALIFORNIA CONSUMER PRIVACY ACT

### Cal. Civ. Code §§ 1798.100 *et seq.*

### (On Behalf of Plaintiffs and Each Class Members against all Defendants and DOES 1-100)

152.    The preceding factual statements and allegations are incorporated by reference.

153.    Plaintiffs and California class members are "consumer[s]" as that term is defined in Cal. Civ. Code. § 1798.140(g). Weee and each DOE Defendant are a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c).

154.    Plaintiffs' and Class members' PII is "nonencrypted and nonredacted personal information" as that term is used in Cal. Civ. Code § 1798.150(a)(1). The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1).  As does the transmission of data to China through the CCP owned and operated Wechat payment gateway.

155.    Defendants had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Plaintiffs' and California Class Members' PII to protect said PII.

156.    Defendants breached the duty they owed to Plaintiffs and California Class Members described above, including the heightened duty owed to Plaintiffs, Defendants breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the PII of Plaintiffs and California Class Members; (b) detect the breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

157.    Defendants' breach of the duty they owed to Plaintiffs and the California Class Members described above was the direct and proximate cause of the Data Breach. As a result, Plaintiffs and the Class members suffered damages, as described above and as will be proven at trial.

158.    Plaintiffs seek injunctive relief in the form of an order enjoining Defendants from continuing the practices that constituted their breach of the duty owed to Plaintiffs and Class including sharing data with the CCP Members as described above. Plaintiffs have served a letter of notice on Weee! pursuant to Cal. Civ. Code § 1798.150(b) and anticipate amending this Complaint to seek statutory damages upon receipt of a written statement from Weee! in response to that letter of notice.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all class members

proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

1) For an Order certifying the Classes, as defined herein, and appointing Plaintiffs and Plaintiffs' counsel to represent the Class as alleged herein;

2) For injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and class members, including but not limited to an order:

    a) Prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    b) Requiring Defendants to protect, including through adequate encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

    c) Requiring Defendants to delete, destroy, and purge the PII of Plaintiffs and class members unless Defendants can provide the Court a reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and the class members;

    d) Requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and class members' PII;

    e) Requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

    f) Requiring Defendants to audit, test, and train its personnel regarding any new or modified procedures;

    g) Requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

    h) Requiring Defendants to conduct regular database scanning and security checks;

---

41

i) Requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiffs and Class Members;

j) Requiring Defendants to routinely and continually conduct internal training and education, at least annually, to inform security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

k) Requiring Defendants to implement, maintain, regularly review, and revise as necessary, a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

l) Requiring Defendants to meaningfully educate all class members about the threats they face as a result of the loss of their PII to third parties, as well as the steps affected individuals must take to protect themselves;

m) Requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from its servers, as well as programs sufficient to protect infiltration of Defendants' local servers (or vendor services) connected to Defendants' systems; and

n) Requiring Defendants to provide ten years of identity theft and fraud protection services to Plaintiffs and class members.

o) Prohibiting Defendants from sharing PII of any kind with the CCP and/or WeChat.

3) For an award of compensatory, consequential, and general damages, including nominal damages, as allowed by law in an amount to be determined;

4) For an award of statutory damages and punitive damages and other exemplary

1    damages, as allowed by law in an amount to be determined;

2    5) For an award of restitution or disgorgement, in an amount to be determined;

3    6) For an award of attorneys' fees, costs, and litigation expenses, as allowed by

4  law;

5    7) For prejudgment interest on all amounts awarded; and

6    8) Such other and further relief as the Court may deem just and proper.

7

8  Date:    February 18, 2025                    LINDEMANN LAW FIRM, APC
                                                 BLAKE J. LINDEMANN
9

10                                               By:  /s/ Blake J. Lindemann
                                                      Blake J. Lindemann
11

12                                               Attorneys for Plaintiffs and the
                                                 Proposed Classes
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' CLASS ACTION COMPLAINT